**Case No. 22-35604**

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———— • ————

IN THE MATTER OF:  JOHN FELIX CASTLEMAN, SR.;
KIMBERLY KAY CASTLEMAN,
*Debtors,*

JOHN FELIX CASTLEMAN, SR.; KIMBERLY KAY CASTLEMAN,
*Appellants,*

v.

DENNIS LEE BURMAN, Chapter 7 Trustee,
*Appellee.*

_____

*On Appeal from the United States District Court for the Western District of Washington (Seattle),*
*Case No. 2:21-cv-00829-JHC · Honorable John H. Chun, District Judge*

## APPELLANTS' PETITION FOR REHEARING EN BANC

STEVEN C. HATHAWAY
**HATHAWAY HOLLAND LAW FIRM, PLLC**
3811 Consolidation Avenue
Bellingham, Washington 98229
Telephone: (360) 676-0529
shathaway@expresslaw.com

*Attorney for Appellants,*
*John Felix Castleman, Sr. and*
*Kimberly Kay Castleman*


COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER


## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................ ii

I.      RULE 35(b)(1) and CIRCUIT RULE 35-1 STATEMENT ............................. 1

II.     PROCEDURAL BACKGROUND ................................................................. 4

III.    ARGUMENT ................................................................................................ 7

        A.      The Majority's Reliance on Chapter 7 Cases to Define Property
                of the Estate in a Case Converted from Chapter 13 is Flawed ............. 7

        B.      Legislative History Resolves the Issue in Favor of Debtors .............. 10

        C.      The Majority Overlooks Pronouncements by This Circuit
                and Its BAP on the Relevant Issue ................................................... 12

        D.      Section 522(c) and This Circuit's *Tillman* Decision Remove
                Exempt Property from the Estate ....................................................... 14

IV.     CONCLUSION ........................................................................................... 16

CERTIFICATE OF COMPLIANCE ............................................................... 17

OPINION: U.S. Court of Appeals for the Ninth Circuit, Case No. 22-35604,
Filed July 28, 2023

# TABLE OF AUTHORITIES

**CASES** **Page(s)**

*Barclay v. Boskoski*,
 52 F. 4th 1172 (9th Cir. 2022)........................................................15

*Black v. Leavitt (In re Black)*,
 609 B.R. 518 (9th Cir. BAP 2019)..............................................9, 13

*Brown v Barclay (In re Brown)*,
 953 F. 3d 616 (9th Cir. 2020)..........................................................12

*California Franchise Tax Board v. Jones (In re Jones)*,
 657 F. 3d 921 (9th Cir. 2011)..........................................................12

*Gebhart v Gaughan (In re Gebhart)*,
 621 F. 3d 1206 (9th Cir. 2010)........................................................15

*Harris v. Viegelahn*,
 575 U.S. 510 (2015)...........................................................................6

*Hyman v. Plotkin (In re Hyman)*,
 967 F. 2d 1316 (9th Cir. 1992).......................................................5, 6

*In re Boyum*,
 2005 WL 2175879 (D. Or. 2005)......................................................5

*In re Cofer*,
 625 B.R. 194 (Bankr. Id. 2021) .......................................................11

*In re Goins*,
 539 B.R. 510 (Bankr. E.D. Va. 2015) ...............................................5

*In re Hodges*,
 518 B.R. 445 (E.D. Tenn. 2014) ......................................................11

*In re Niles*,
 342 B.R. 72 (Bankr. D. Ariz. 2006)...................................................9

*In re Peter*,
 309 B.R. 792 (Bankr. D. Or. 2004)....................................................5

*Kendall v. Lynch (In re Lynch)*,
 363 B.R. 101 (9th Cir. BAP 2007)......................................11, 13, 14

*Mwangi v. Wells Fargo Bank* (*In re Mwangi*),
    764 F. 3d 1168 (9th Cir. 2014) .......................................................15

*Perlman v Catapult Entm't. Inc. (In re Catapult Entm't, Inc.)*,
    165 F. 3d 747 (9th Cir. 1999) ....................................................3, 10

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) .......................................................................7

*Rockwell v. Hull (In re Rockwell)*,
    968 F. 3d 12 (1st Cir. 2020) ...........................................................15

*Rodriguez v. Barrera (In re Barrera)*,
    22 F. 4th 1217 (10th Cir. 2022) ...........................................1, 3, 9, 10

*Schwaber v. Reed (In re Reed)*,
    940 F. 2d 1317 (9th Cir. 1991) .....................................................6, 8

*United States v. Warfield (In re Tillman)*,
    53 F. 4th 1160 (9th Cir. 2022) ......................................................15

*Wilson v. Rigby*,
    909 F. 3d 312 (9th Cir. 2018) ....................................................5, 6, 8

**STATUTES**

11 U.S.C. § 348 ........................................................................*passim*

11 U.S.C. § 522 ........................................................................14, 15

11 U.S.C. § 541 ...................................................................6, 7, 8, 9

11 U.S.C. § 1322 .............................................................................8

11 U.S.C. § 1325 .............................................................................8

11 U.S.C. § 1327 ..........................................................8, 9, 12, 13, 16

**OTHER AUTHORITIES**

Bankruptcy Reform Act of 1994, Pub. L. No. 103-394,
    108 Stat. 4106 (1994) ...................................................................10

H.R. Rep. No. 103-835 (1994) ...........................................................11

## I.    RULE 35(b)(1) and CIRCUIT RULE 35-1 STATEMENT

The Panel majority in this case ruled that the increase in the value of a debtor's exempt real property that accrued during the pendency of a Chapter 13 case became property of the Chapter 7 bankruptcy estate upon good faith conversion.  As the dissent in the Opinion pointed out, this ruling "both creates a circuit split and effectively punishes the Castlemans for filing under Chapter 13" since it will result in the forced sale of their previously fully exempt home by the Chapter 7 trustee unless reversed by an *en banc* panel.[1]  The majority's holding means that post-confirmation, pre-conversion increased equity in the debtors' home became property of the Chapter 7 estate.  The Tenth Circuit in *Rodriguez v. Barrera (In re Barrera),* 22 F. 4th 1217, 1223 (10th Cir. 2022), using the same plain language analysis as the majority, ruled the opposite, holding that the increased equity belonged to the debtors.  The Castlemans request rehearing *en banc* to avoid this circuit split and the resulting penalty imposed on good faith debtors for attempting to pay their creditors through a Chapter 13 plan.

The issue raised in this case has national application because whether increased equity in Chapter 13 debtors' property (from paying down the mortgage, appreciation, or improvement to the property) becomes property of the Chapter 7 estate upon good faith conversion is "an issue which has confounded judges all

---

[1] Dissent to Opinion, p. 12.

1

over the country."[2]  In Part A of Argument below, the magnitude of this

controversy will become apparent, because not only has the Tenth Circuit ruled to

the contrary, but dozens of lower courts have also analyzed the issue, with differing

results.  Although most of these decisions favor the increased value inuring to the

debtors, a significant minority has disagreed.  The resolution of this dispute will

have an immense impact on whether many debtors will continue to utilize Chapter

13s to repay some amount to their secured and unsecured creditors.

As many of the lower court opinions and the dissent here have recognized,

such rulings disincentivize debtors from opting to file Chapter 13, where they must

commit future disposable income to repay their creditors over a three- or five-year

plan, instead of just filing a Chapter 7 to discharge their debt.  Nonexempt property

of the estate which a Chapter 7 trustee might liquidate for the benefit of creditors is

fixed on the petition date; because most Chapter 7s are concluded in four to five

months, post-petition increase in the value of an exempt homestead would not be

an issue.  Under the majority's ruling, however, if good faith Chapter 13 debtors

must convert to Chapter 7 because they are unable to continue making plan

payments, they risk losing their homes to a forced sale when it has increased in

value.  Many prospective debtors will not take that risk, resulting in fewer Chapter

13s being filed and less money flowing to creditors.

---

[2] Dissent to Opinion, p. 12.

The ironic circumstance surrounding the circuit split caused by the majority Opinion is that the controlling statute, 11 U.S.C. § 348(f)(1)[3], was enacted by Congress in 1994 to settle this controversy in favor of the debtors, not create a new one. Even though a plain text analysis by the Panel reached one result and the Tenth Circuit in *Barrera*, adopting the same analysis, reach the opposite conclusion, the majority here found the statute unambiguous and declined to consult the legislative history which led to the enactment of this section. Not only does the circuit split and the myriad of other cases highlight the ambiguity which courts have found in interpreting the statute, but the majority also overlooked Ninth Circuit precedent on when to consult legislative history, *Perlman v Catapult Entm't. Inc. (In re Catapult Entm't, Inc.)*, 165 F. 3d 747 (9th Cir. 1999). The *Perlman* court determined that even lack of ambiguity does not bar consulting such history by observing that courts will resort to legislative history, even where the plain language is unambiguous, "where the legislative history clearly indicates that Congress meant something other than what it said." *Id.* at 753. Part B of Argument below analyzes the legislative history behind the enactment of Section 348(a)(1), which makes it abundantly clear that Congress intended increased equity

---

[3] Unless otherwise indicated, all section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

3

in Chapter 13 debtors' property to be excluded from the Chapter 7 estate upon good faith conversion.

For these stated reasons, the Castlemans urge the Ninth Circuit to grant *en banc* rehearing of this case.

## II.     PROCEDURAL BACKGROUND

On June 13, 2019, The Castlemans filed a Chapter 13 bankruptcy. ER-110. On September 25, 2019, the bankruptcy court confirmed their Chapter 13 plan. ER-114. The Castlemans valued their home at $500,000 on their bankruptcy schedules with a mortgage of $375,077. ER-58 and ER-69. They exempted the $124,923 equity they had in the home on the petition date. ER-65.

During the 20 months they were in Chapter 13, the Castlemans paid $22,075.00 to the Chapter 13 trustee for distribution to creditors. ER-47. The Chapter 13 Trustee, pursuant to the confirmed Chapter 13 plan (ER-53), paid $11,286.47 to Heritage Bank for an auto loan secured by the Castlemans 2015 Chevrolet Tahoe and paid $2,847.49 to Alaska USA Federal Credit Union for an auto loan secured by their 2015 Nissan Sentra, ER-47. The Castlemans continued to pay their home mortgage, in the amount of $2,417 per month, directly to secured creditor, Mr. Cooper. ER-54.

Mr. Castleman was diagnosed with Parkinson's disease which required him to quit working in January 2021. ER-31: 7-8. This loss of income caused the

Chapter 13 plan to become infeasible and the Castlemans exercised their right to convert their case to Chapter 7 on February 5, 2020.  ER-31:13-14.

After conversion, the Chapter 7 trustee sought court approval to sell the Castlemans' home, arguing the 2005 amendment to Section 348(f)(1)(B) made appreciation in the value of the home during the pendency of the Chapter 13 property of the Chapter 7 bankruptcy estate upon conversion.  ER-37.  The Castlemans responded that appreciation in the value of their home during the Chapter 13 is excluded from the Chapter 7 estate upon conversion by Section 348(f)(1)(A) and (f)(2).  ER-24:15-25.

The bankruptcy court rejected the Chapter 7 trustee's Section 348(f)(1)(B) argument but nevertheless ruled in his favor, adopting the reasoning of the minority view expressed in a Virginia bankruptcy court decision, *In re Goins,* 539 B.R. 510 (Bankr. E.D. Va. 2015) and an Oregon bankruptcy court decision, *In re Peter*, 309 B.R. 792, 795 (Bankr. D. Or. 2004)[4], and also relying on three Ninth Circuit Chapter 7 cases which held that post-petition appreciation is not treated as a separate asset from pre-petition property and inures to the bankruptcy estate, not the debtor.  *Wilson v. Rigby*, 909 F. 3d 312 (9th Cir. 2018); *Hyman v. Plotkin (In re*

---

[4] *Peter's* reasoning was rejected by the Oregon District Court in *In re Boyum*, 2005 WL 2175879 (D. Or. 2005), which found post-petition, pre-conversion increases in equity is property of the debtor, not the Chapter 7 estate. *Id.*

*Hyman)*, 967 F. 2d 1316, 1321 (9th Cir. 1992); and *Schwaber v. Reed (In re Reed)*, 940 F. 2d 1317, 1323 (9th Cir. 1991). Despite those cases being originally filed as Chapter 7 cases, the majority found them binding precedent.

The district court affirmed the bankruptcy court's decision. ER-5. Citing *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015), it acknowledged that section 348(f)(1)(A) unambiguously provides that property acquired after the initial Chapter 13 petition but before conversion to Chapter 7 inures to the debtor. ER-7:9-11. Nevertheless, the district court ruled that Section 348(f) did not address whether the increase in equity in the Castlemans' home qualified as a separate, after-acquired property interest because it was inseparable from the asset itself under the reasoning of *Wilson v. Rigby,* which had considered it to be "[p]roceeds, product, offspring, rents, or profits" of the Castlemans' homestead under Section 541(a)(6).[5] ER-7, 9.

The Castlemans timely appealed to the Ninth Circuit. They and the Chapter 7 trustee stipulated that the order approving the sale be stayed through the completion of the appellate process. ER-12.

---

[5] Note that section 541(6) only applies in Chapter 7s.

## III.   ARGUMENT

### A.   The Majority's Reliance on Chapter 7 Cases to Define Property of the Estate in a Case Converted from Chapter 13 is Flawed

This decision turns on what is "property of the estate" under Section 348(f) in a case converted to Chapter 7.  The Castlemans agree with both the majority and the dissent that this phrase is a term of art which should be defined by looking at the "broader context of the [Bankruptcy Code] as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).  They also agree that the starting point is Section 541(a)(1), which in relevant part defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case."  Also included in property of the estate in a chapter 7 under Section 541(a)(6) is all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except [income of an individual debtor]."  These sections must be analyzed to determine how they fit in the "broader context" with Section 348(f).  Section 348(f) states in relevant part as follows:

> (f)(1)  Except as provided in paragraph (2), when a case under chapter 13… is converted to a case under another chapter… ---
>
>   (A)  property of the estate in the converted case shall consist of property of the estate, as of the date of the filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion;
>
>   ……
>
>   (2) If the debtor converts a case under chapter 13…to a case under another chapter…in bad faith, the property of the estate in the

7

> converted case shall consist of the property of the estate as of
> the date of conversion.

It is notable that this section defines property of the estate in one particular context: when a Chapter 13 case is converted to another chapter. Notwithstanding that particularity, the majority relied on rulings which held that in an originally filed Chapter 7, an increase in value of property of the estate inured to the benefit of the estate. *Wilson v Rigby*, 909 F. 3d at 309; *In re Reed*, 940 F. 2d at 1323. Such reliance was error. Both cases applied Section 541(a)(6), which does not directly apply in Chapter 13s, for their conclusion that appreciation in value of a debtor's home belonged to the estate. Although the majority gives lip service to conducting an analysis in the broader context of the Code, it does not consider the whole of the Code, nor does it recognize significant policy behind Chapter 13s.

Chapter 13 debtors make a bargain to retain their property, exempt or nonexempt, by proposing a plan which commits future income, not property of the estate in a Chapter 7 (per Section 541(a)(6)), to repay creditors in compliance with the requirements of Sections 1322 and 1325. If there is nonexempt equity in property, that equity is taken into account by the statutorily calculated sum debtors must pay to their unsecured creditors through a plan. That equity is measured on the petition date. Once a plan is confirmed, unless a court orders otherwise, under Section 1327(b) all property of the estate revests in the debtor; there no longer is any property *of the estate* because the debtor again owns it. This revesting of

property was significant to the analysis by the Tenth Circuit in *Barrera* and to the reasoning of the dissent in this matter.

In *Barrera* the debtors confirmed their Chapter 13 plan and later sold their home. They then converted to a Chapter 7. When the Chapter 7 trustee attempted to claim the proceeds from the sale as property of the estate, relying on the language in Section 541(a)(6), the Tenth Circuit observed that "only proceeds 'of or from property of the estate' become property of the bankruptcy estate" under that section. Since the property revested upon confirmation, the proceeds belonged to the debtors, not the estate. *Id.* at 1223.[6]

The Tenth Circuit acknowledged that its interpretation of section 348(f)(1)(A) "potentially allows converting debtors to sell property of the estate after confirmation of the chapter 13 plan prior to conversion to shield the value of those assets from creditors." *Id.* at 1225. But it also noted that the Bankruptcy Code anticipated debtors might attempt to protect their assets to the detriment of creditors and therefore enacted Section 348(f)(2) to provide recourse if the debtors converted the case in bad faith. *Id.* The Tenth Circuit closed its opinion by stating: "The most faithful reading of the statutory text supports the conclusion that the

---

[6] The revesting provision of section 1327(b) has caused bankruptcy courts in this circuit to hold that the increased equity belongs to the debtors, among them the Ninth Circuit BAP in *Black v. Leavitt (In re Black)*, 609 B.R. 518, 529 (9th Cir. BAP 2019) and *In re Niles*, 342 B.R. 72, 75 (Bankr. D. Ariz. 2006).

proceeds from the sale of the Debtors' house belong to the Debtors, not the Chapter

7 estate." *Id.* at 1226.

**B.** **Legislative History Resolves the Issue in Favor of Debtors**

The majority ruled that Section 348(a)(1)(A) was not ambiguous and

therefore it was not necessary to consult legislative history. This ruling overlooked

the mandate of *Perlman*, noted in the 35(b) Statement. Moreover, when two

circuits applied a strict textual analysis and arrived at different results, how can that

not show the statute by itself is ambiguous? When a statute is ambiguous, courts

are entitled to consult legislative history, which in this instance demonstrates that

this section was enacted to end just such controversy. Congress amended Section

348 in 1994 to add Subsection (f)(1). The Bankruptcy Reform Act of 1994, Pub.

L. No. 103-394, 108 Stat. 4106 (1994). This change was caused by a split in

authority regarding what property constituted property of a Chapter 7 estate in a

case converted from Chapter 13. The House Report indicates why Section

348(f)(1)(A) was enacted:

> [to] clarify the Code to resolve a split in the case law about what
> property is in the bankruptcy estate when a debtor converts from
> chapter 13 to chapter 7…. Some courts have held that if the case is
> converted, all of this after-acquired property becomes part of the
> estate in the converted chapter 7 case, even though the statutory
> provisions making it property of the estate do not apply in chapter 7.
> Other courts have held that the property of the estate in a converted
> case is the property the debtor had when the original chapter 13
> petition was filed.

> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating [another] $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7….If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home to realize the…[increased] equity for the unsecured creditors and the debtor would lose the home.

> This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F. 2d 136 (7th Cir. 1991) [a case in which after-acquired property was included in the chapter 7 estate] and adopts the reasoning of *In re Bobroff*, 766 F. 2d 797 (3rd Cir. 1985) [ a case which accords the increases in value of the estate to the debtors].

H.R. Rep. No. 103-835, at 57 (1994).

Admittedly, neither of the cases mentioned in the House Report dealt with an increase in equity in property that was owned by the debtors on the petition date. However, the example given in the Report is *exactly* what could happen to the Castlemans here if the majority ruling stands.

Several lower court cases have noted the risk and disincentive to file which the majority ruling creates. These cases rely primarily on the language in the legislative history which demonstrates that Congress intended to prevent a penalty being imposed on good faith Chapter 13 debtors who must convert to Chapter 7 when it added Section 348(f)(1)(A). *See,* for example, *In re Cofer*, 625 B.R. 194, 199 (Bankr. Id. 2021); *In re Hodges*, 518 B.R. 445, 450 (E.D. Tenn. 2014); *Kendall v. Lynch (In re Lynch),* 363 B.R. 101, 107 (9th Cir. BAP 2007). These cases

highlight the legislative purpose: to avoid discouraging debtors from filing Chapter 13s because they feared losing their homes upon conversion.

### C. The Majority Overlooks Pronouncements by This Circuit and Its BAP on the Relevant Issue

Although the Ninth Circuit has not ruled on the precise issue in this case, two circuit cases and two cases from the Ninth Circuit BAP shed light on whether post confirmation appreciation belongs to the debtors or the Chapter 7 estate. In *Brown v Barclay (In re Brown),* 953 F. 3d 616 (9th Cir. 2020) this circuit ruled that funds fraudulently transferred in a Chapter 13 pre-conversion were property of the Chapter 7 estate. To reach this conclusion, the court analyzed the enactment of Section 348(a)(1)(A) and acknowledged Congress adopted it to "avoid penalizing the debtor who initially engaged in voluntary bankruptcy under Chapter 13" by restricting the assets of the converted estate to property as of the filing date. *Id.* at 620. The majority here overlooked this circuit recognition of the penalty to debtors their ruling will impose.

In *California Franchise Tax Board* v. *Jones (In re Jones)*, 657 F. 3d 921 (9th Cir. 2011) the court relied upon the revesting provisions of Section 1327(b) in holding that tax debt was discharged. The question before the court was whether the three-year lookback period which applies to discharging tax debt was suspended during the debtor's prior Chapter 13 case. The panel held it was not; Section 1327(b) revested the property of the estate in the debtor upon confirmation,

so the Franchise Tax Board could have collected the tax debt from the debtor after

confirmation during the three-year lookback period.  The Ninth Circuit saw the

consequence of revesting provided by section 1327(b) when concluding the debtor

owned the property, not the estate.  Translated to the facts here, the Residence

belonged to the Castlemans post confirmation and the appreciation also belonged

to them.

The BAP applied the effect of Section 1327(b) revesting directly to

appreciation in *Black v Leavitt*, 609 B.R. at 529.  In *Black* a Chapter 13 debtor sold

his house post confirmation and the trustee moved to modify the plan to compel

the debtor to pay the excess proceeds into the plan.  The BAP reversed an order

approving the modification because the house had revested in the debtor upon

confirmation:

> In our view, the revesting provision of the confirmed plan means that
> the debtor owns the property outright and that the debtor is entitled to
> any postpetition appreciation.  When the bankruptcy court confirmed
> Mr. Black's plan, the Property revested in Mr. Black…As such, it was
> no longer property of the estate, so the appreciation did not accrue
> from estate property.

*Id.* at 529.

The majority opinion did not address this view of the BAP nor attempt to

distinguish it from the issue at hand.

In *Kendall v. Lynch*, 363 B.R. at 107, the BAP acknowledged the purpose of

Section 348(f)(2) which expands the Chapter 7 estate when a conversion is in bad

13

faith. The question before the panel was the meaning of Section 348(f)(1)(B) which deals with valuations of property in a chapter 13 prior to conversion. The BAP's comments are telling:

> Excluding equity resulting from debtors' payments on loans secured by their residence and property appreciation subsequent to their chapter 13 filing in a case converted to chapter 7 serves the congressional purpose of encouraging chapter 13 reorganizations over chapter 7 liquidations, as reflected in the legislative history…That interpretation is buttressed by the language of § 348(f)(2), that provides in contrast to § 348(f)(1)(B), if a debtor converts a chapter 13 case to chapter 7 in bad faith "the property in the converted case shall consist of the property of the estate as of the date of conversion.

*Id* at 107.

The BAP acknowledged the legislative purpose behind the enactment of Section 348(f)(1)(A), yet the majority disregards that purpose.

**D. Section 522(c) and This Circuit's *Tillman* Decision Remove Exempt Property from the Estate**

The Castleman's Residence was fully exempt under Washington state law on the petition date. Section 522(c) of the Bankruptcy Code provides that "[u]nless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, …, before the commencement of the case, except… [a list of exceptions, none of which apply here]." By claiming the increased equity in the Residence as property of the Chapter 7 estate, the trustee is subjecting that equity to liability for debts that arose before the commencement of the case, which is forbidden by statute. Section 522(b)(1)

14

further states that exemptions from the estate apply "[n]otwithstanding section 541 of this title."  Exemptions are fixed on the petition date.  *Barclay v. Boskoski*, 52 F. 4th 1172, 1174-75 (9th Cir. 2022).  This concept is referred to as the snapshot rule, *Rockwell v. Hull (In re Rockwell),* 968 F. 3d 12, 18, 20 (1st Cir. 2020), and reinforces that debtors' rights in their property are established as of the commencement of the case.  Section 522(c) assures that if the Residence is exempt on that date, it shall remain so, not subject to administration by the estate.

This circuit has acknowledged that exempted property interests are "withdrawn from the estate."  *Gebhart v Gaughan (In re Gebhart)*, 621 F. 3d 1206, 1210 (9th Cir. 2010).  A recent case arising from a Chapter 7 proceeding, *United States v. Warfield (In re Tillman)*, 53 F. 4th 1160, 1168 (9th Cir. 2022), reinforced this rule, citing *Mwangi v. Wells Fargo Bank* (*In re Mwangi*), 764 F. 3d 1168, 1175 (9th Cir. 2014) for the rule:  "The general rule is that exempt property immediately revests in the debtor."  The *Tillman* panel held "[w]hen a debtor properly exempts a property interest under § 522, the exemption withdraws that property interest from the estate, and thus, from the reach of the trustee for distribution to creditors.  *See Owen*, 500 U.S. at 308, 111 S. Ct. 1833)."  *Id.* at 1169.

The majority Opinion gave no credence to *Tillman* nor recognized the impact of Section 522(c).  Revisiting this ruling *en banc* is called for under these circumstances.

15

## IV. CONCLUSION

The majority's holding not only runs contrary to Section 1327(b)'s revesting provision and the legislative history for the enactment of Section 348(f)(1)(A), but it also defies earlier rulings by this circuit and the Ninth Circuit BAP which touch on the very issue before it in Chapter 13 cases. It instead erroneously relied on more remote Chapter 7 authorities which are more remote to hold that the increased equity in the Residence was property of the Chapter 7 estate after conversion. The practical effect of the ruling will be that debtors' attorneys will need to counsel them away from filing Chapter 13s, which are better for all, including creditors, because of the risk they may lose their homes if their property value increases before conversion. Congress never intended that result. The Castlemans respectfully request rehearing *en banc.*[7]

Date: August 11, 2023                    Respectfully submitted,

                                        */s/ Steven C. Hathaway*
                                        Steven C. Hathaway, WSBA #24971
                                        shathaway@expresslaw.com

                                        *Attorney for Appellants,*
                                        *John Felix Castleman, Sr. and*
                                        *Kimberly Kay Castleman*

---

[7] Special assistance in preparing this Petition was provided by Meredith Jury (Ret.) Bankruptcy Judge United States Bankruptcy Court, Central District of California, 1997-2018.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 22-35604

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

○ Prepared in a format, typeface, and type style that complies with Fed. R. App. P. 32(a)(4)-(6) and **contains the following number of words**: | 3,978 |.

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | /s/ Steven C. Hathaway | **Date** | August 11, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11**      17      *Rev. 12/01/2021*

# OPINION

Case: 22-35604, 08/11/2023, ID: 12772707, DktEntry: 33, Page 23 of 46

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| In the Matter of: JOHN FELIX CASTLEMAN, Sr.; KIMBERLY KAY CASTLEMAN, *Debtors,* | No. 22-35604 |
| | D.C. No. 2:21-cv-00829-JHC |
| ------------------------------ | |
| JOHN FELIX CASTLEMAN, Sr.; KIMBERLY KAY CASTLEMAN, *Appellants,* | OPINION |
| v. | |
| DENNIS LEE BURMAN, Chapter 7 Trustee, *Appellee.* | |

Appeal from the United States District Court
for the Western District of Washington
John H. Chun, District Judge, Presiding

Argued and Submitted May 9, 2023
Seattle, Washington

Filed July 28, 2023

Case: 22-35604, 08/11/2023, ID: 12772707, DktEntry: 33, Page 24 of 46

Before:  Michael Daly Hawkins, Richard C. Tallman, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Hawkins;
Dissent by Judge Tallman.

---

# SUMMARY[*]

---

## Bankruptcy

Affirming the district court's order, which affirmed the bankruptcy court's order, the panel held that post-petition, pre-conversion increases in the equity of an asset belong to the bankruptcy estate, rather than to debtors who, in good faith, convert their Chapter 13 reorganization petition into a Chapter 7 liquidation.

When debtors filed for bankruptcy, they listed their home among their assets.  When they later converted to Chapter 7, the home had risen in value.  Debtors argued that the home's increased equity belonged to them and not the bankruptcy estate under 11 U.S.C. § 348(f)(1)(A), which provides that "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Case: 22-35604, 08/11/2023, ID: 12772707, DktEntry: 33, Page 25 of 46

On de novo review, the panel held that the plain language of § 348(f)(1)(A), coupled with the Ninth Circuit's previous interpretation of 11 U.S.C. § 541(a), compelled the conclusion that any appreciation in the property value and corresponding increase in equity belonged to the estate upon conversion. The panel looked to the definition of "property of the estate" in § 541(a), which addresses the contents of the bankruptcy estate upon filing under either Chapter 7 or Chapter 13, and the court's prior opinions holding that the broad scope of § 541(a) means that post-petition appreciation inures to the bankruptcy estate, not the debtor.

Dissenting, Judge Tallman wrote that the Bankruptcy Code as a whole established that post-petition, pre-conversion appreciation belonged to the debtors. He wrote that the majority's reading of § 348(f)(1)(A) created a circuit split and was inconsistent with the statute's structure, object, policies, and legislative history.

## COUNSEL

Steven Hathaway (argued), Law Office of Steven C. Hathaway, Bellingham, Washington, for Appellants.

Peter H. Arkison (argued), Bellingham, Washington, for Appellee.

Russell D. Garrett, Jordan Ramis PC, Portland, Oregon, for Amicus Curiae National Association of Bankruptcy Trustees.

# OPINION

HAWKINS, Circuit Judge:

We must decide whether post-petition, pre-conversion increases in the equity of an asset—i.e., the difference between a home's value and how much is owed on the mortgage, whether a result of market appreciation, payment of secured debt, improvements or otherwise—belong to the bankruptcy estate or to debtors who, in good faith, convert their Chapter 13 reorganization petition into a Chapter 7 liquidation.

Debtors John Felix Castleman, Sr. and Kimberly Kay Castleman (the "Castlemans") filed for Chapter 13 bankruptcy. They listed their home among their assets with a value of $500,000, a mortgage with an outstanding balance of $375,077, and a homestead exemption of $124,923. The bankruptcy court confirmed a Chapter 13 plan, but after roughly twenty months, which included a temporary job loss and deferral of mortgage payments due to the pandemic, Mr. Castleman contracted Parkinson's Disease, and the couple could no longer make their required payments. The Castlemans exercised their right to convert to Chapter 7. In the interim, their home had risen in value an estimated $200,000.[1] Dennis Burman, the Chapter 7 trustee ("Trustee"), filed a motion to sell the Castlemans' home to recover the value for creditors. The Castlemans objected and argued that the home's increased equity belongs to them and

---

[1] In this case, it appears the increase in equity was attributable primarily, if not exclusively, to market appreciation. Due to the deferral of mortgage payments during the pandemic, the Castlemans actually owed more at the time of filing for conversion ($390,763) than they did at the time of their initial filing.

not the bankruptcy estate under 11 U.S.C. § 348(f)(1)(A).[2]

Although courts are heavily divided on this question,[3] we conclude on de novo review, *Simpson v. Burkart (In re Simpson)*, 557 F.3d 1010, 1014 (9th Cir. 2009), that the plain language of § 348(f)(1)(A), coupled with this circuit's previous interpretation of § 541(a), compel the conclusion that any appreciation in the property value and corresponding increase in equity belongs to the estate upon conversion. We therefore affirm the decisions of the bankruptcy and district courts.

The purpose of the Bankruptcy Code is to grant a "fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (internal quotation marks and citation omitted). Individual debtors may petition for bankruptcy under Chapter 7 (liquidation) or Chapter 13 (reorganization). *Harris v. Viegelahn*, 575 U.S. 510, 513–14 (2015). Chapter 13 "allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three-to-five-year period." *Id*. at 514 (citing §§ 1306(b), 1322, 1327(b)). Chapter 13 can benefit the debtor and creditors: the former keeps his assets, and the latter "usually collect more under a Chapter 13 plan than they would have received

---

[2] Unless otherwise noted, all statutory references are to the Bankruptcy Code, 11 U.S.C. §101 et seq.

[3] *Compare In re Goins*, 539 B.R. 510, 515–16 (Bankr. E.D. Va. 2015), *In re Goetz*, 647 B.R. 412, 416–17 (Bankr. W.D. Mo. 2022), *In re Peter*, 309 B.R. 792, 794–95 (Bankr. D. Or. 2004), and *Potter v. Drewes* (*In re Potter*), 228 B.R. 422, 424 (B.A.P. 8th Cir. 1999), *with In re Barrera*, 22 F.4th 1217 (10th Cir. 2022), *In re Cofer*, 625 B.R. 194, 202 (Bankr. D. Idaho 2021), *In re Hodges*, 518 B.R. 445, 451 (E.D. Tenn. 2014), and *In re Niles*, 342 B.R. 72, 75 (Bankr. D. Ariz. 2006).

Case: 22-35604, 08/11/2023, ID: 12772707, DktEntry: 33, Page 28 of 46
Case: 22-35604, 07/28/2023, ID: 12763949, DktEntry: 31-1, Page 6 of 24

6             CASTLEMAN V. BURMAN

under a Chapter 7 liquidation." *Id.*

However, most debtors fail to successfully complete a Chapter 13 repayment plan, which is why "Congress accorded debtors a nonwaivable right to convert a Chapter 13 case to one under Chapter 7 'at any time.'" *Id.* (quoting § 1307(a)). The property of this converted Chapter 7 estate is defined by § 348(f), which provides in relevant part:

> (1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter under this title-

> (A) property of the estate in the converted case shall consist of **property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion**;

> [. . .]

> (2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion.

(emphasis added). The Trustee does not assert that the Castlemans converted in bad faith, and the Castlemans retained possession of the home on the date of conversion.

In interpreting the Bankruptcy Code, "the first step . . . is to determine whether the language [of a statute] has a plain and unambiguous meaning with regard to the particular

dispute." *Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d 662, 666 (9th Cir. 2014). If the plain meaning is unambiguous, it controls. *Id.*; *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016).

Section 348(f) does not define the word "property" or the phrase "property of the estate." However, "property of the estate" is a term of art which appears throughout the Bankruptcy Code. *See, e.g.*, §§ 541, 554(a), 726(a), 1306(a); *see also* Keith M. Lundin, *Lundin On Chapter 13* § 46.1 (2023) ("'Property of the estate' is a phrase of art that is fundamental to almost everything that happens in Chapter 13 practice."); 4 William L. Norton III, *Norton Bankruptcy Law and Practice* § 61:1 (3d ed. 2023) ("[F]or more than two centuries 'property of the estate' has become a term of art unique to bankruptcy law.").

"Statutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988). We therefore look to the definitions of "property of the estate" set forth in other provisions of the Code itself. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) ("The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.").

Under § 541(a)(1), filing for bankruptcy creates an estate which includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The estate also includes all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor

after the commencement of the case." § 541(a)(6).

In *In re Goins*, the court found the trustee was entitled to any post-petition appreciation in assets of the estate, explaining: "[T]he equity attributable to the post-petition appreciation of the property is not separate, after-acquired property . . . The equity is inseparable from the real estate, which was always property of the estate under Section 541(a)." 539 B.R. at 516; *see also In re Goetz*, 647 B.R. at 416 (the broad definition of "property of the estate" in § 541(a) "captures the debtor's entire ownership interest in each asset that exists on the petition date without fixing the estate's interest to the precise characteristics the asset has on that date"). Other courts have held that any post-petition increase in the property's equity is the "proceeds, product, offspring, rents or profits" of the estate's original property under § 541(a)(6), and so became part of the estate when the case commenced. *See In re Potter*, 228 B.R. at 424; *In re Peter*, 309 B.R. at 794–95.

In this circuit, we have likewise concluded that the broad scope of § 541(a), and especially § 541(a)(6), means that post-petition "appreciation [i]nures to the bankruptcy estate, not the debtor." *Schwaber v. Reed* (*In re Reed*), 940 F.2d 1317, 1323 (9th Cir. 1991). We recently re-affirmed this in *Wilson v. Rigby*, noting that when a debtor files for bankruptcy, the "proceeds, product, offspring, rents, or profits" which become part of the estate under § 541(a)(6) "include[] the appreciation in value of a debtor's home." 909 F.3d 306, 309 (9th Cir. 2018). The Castlemans point out that *Wilson* was originally filed as a Chapter 7 case, but the definition of property of the estate in § 541(a) applies equally to Chapter 13. There is no textual support for concluding that § 541(a) has a different meaning upon conversion from Chapter 13. As the district court in this case

CASTLEMAN V. BURMAN                    9

aptly summarized the significance of these prior Ninth
Circuit decisions:

> It is well settled that in a Chapter 7 case, all
> property that the debtor acquires post-petition
> is excluded from the estate.  *See, e.g., Harris*,
> 575 U.S. at 514 (citing § 541(a)(1)).
> Therefore, if appreciation were a separate,
> after-acquired property interest, it would
> have to inure to the debtor.  The Ninth
> Circuit, in finding that appreciation inures to
> the estate under § 541(a)(6), has necessarily
> found that increased equity in a pre-petition
> asset cannot be a separate, after-acquired
> property interest.  This logic applies with
> equal force in a conversion case.

Many of the courts who have reached a different
conclusion regarding post-petition changes in equity have
relied on various statements or examples in the legislative
history surrounding § 348(f), which was enacted to clarify
whether new property acquired during the course of Chapter
13 proceedings becomes property of the converted estate
(under § 348(f)(2), this occurs only if the debtor was acting
in bad faith).  *See, e.g., In re Cofer*, 625 B.R. at 200–02; *In
re Nichols*, 319 B.R. at 856.  However, because we conclude
the language of § 348(f), when read in conjunction with the
remainder of the Bankruptcy Code, is not ambiguous, we do
not look to legislative history for guidance.  *Robinson*, 519

U.S. at 340 ("Our inquiry must cease if the statutory language is unambiguous.").[4]

Some courts have also relied on the implicit operation of § 1327(b), which provides: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Under this reasoning, equity increases from the time of the initial filing up until plan confirmation would inure to the estate, then from time of confirmation until conversion would vest in the debtor, and finally upon conversion, any additional post-conversion changes would benefit the estate. *See, e.g., In re Barrera*, 22 F.4th at 1223–24. However, we find it difficult to believe Congress envisioned this valuation and accounting process without making any explicit cross-reference to § 1327(b), and because in other instances where Congress wanted to exclude assets or certain interests of the debtor from the bankruptcy estate, it has done so with specificity. *See, e.g.,*

---

[4] We recognize that some courts have found § 348(f) to be ambiguous. However, the existence of a division of judicial authority does not itself establish ambiguity in the text. *See, e.g., Roberts v. Sea-Land Servs., Inc.*, 132 S. Ct. 1350 (2012) (holding provision of Longshore and Harbor Workers' Compensation Act is unambiguous despite disagreement between Fifth, Ninth and Eleventh Circuits); *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (holding term used in Torture Victim Protection Act was unambiguous despite disagreement among several circuits); *Reno v. Koray*, 515 U.S. 50, 64–65 (1995) ("A statute is not ambiguous for purposes of lenity merely because there is a division of judicial authority over its proper construction.") (internal quotation and citation omitted). As we have explained, even if § 348(f) in isolation might be ambiguous, when read in connection with the remainder of the bankruptcy statute as already interpreted by this circuit, its meaning becomes clear. *See United Sav. Ass'n of Tex.*, 484 U.S. at 371 ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme.").

Case: 22-35604, 08/11/2023, ID: 12772707, DktEntry: 33, Page 33 of 46
Case: 22-35604, 07/28/2023, ID: 12763949, DktEntry: 31-1, Page 11 of 24

CASTLEMAN V. BURMAN                                    11

§ 541(a)(6) (excluding post-petition earnings by an individual in a Chapter 7 case) and § 541(b) (excluding various specific items from the estate, such as funds used to purchase a 529 education plan). If, as the dissent suggests, Congress actually intended to exclude from the revived estate any increase in equity of an estate asset that may have occurred from the time of plan confirmation to conversion, it could have amended § 348(f) further to make this result clear. As written, § 348(f) only clarified that newly-acquired, post-petition property would not become part of the converted estate if the debtor had been acting in good faith.

In sum, the plain language of § 348(f)(1) dictates that any property of the estate at the time of the original filing that is still in debtor's possession at the time of conversion once again becomes part of the bankruptcy estate, and our case law dictates that any change in the value of such an asset is also part of that estate. In this case, that property increased in value. In other cases, the value might decline, or the value of one asset in the estate might increase while other property depreciates in value. This is simply a happenstance of market conditions, which sometimes will benefit the debtor and sometimes benefit the estate.[5] The district court and bankruptcy court correctly concluded that the Castlemans' home (including any post-petition, pre-conversion increase in equity) was again part of the bankruptcy estate pursuant

---

[5] Note that, for example, the debtor's homestead exemption is fixed as of the "snapshot" value on the date of the original filing. *See Hyman v. Plotkin (In re Hyman)*, 967 F.2d 1316, 1321 (9th Cir. 1992) ("Were we to accept the Hymans' argument that they're entitled to post-filing appreciation, we would also have to hold that a debtor is subject to post-filing *de*preciation, which would give debtors in falling property markets less than the [homestead exemption] guaranteed them by state law.").

to § 348(f)(1) and available to the Trustee for the benefit of the creditors.[6]

**AFFIRMED.**[7]

---

TALLMAN, Circuit Judge, dissenting.

As counsel for the trustee aptly put it, John and Kimberly Castleman "tried to do good and tried to pay off their bills" by petitioning for bankruptcy under Chapter 13 and proposing a plan to repay their creditors.[1]  But, unable to complete the repayment plan, they were forced into a Chapter 7 liquidation.  We now must decide whether appreciation in the value of their home during Chapter 13 proceedings becomes part of the converted Chapter 7 bankruptcy estate—an issue which has confounded judges all over the country.  In holding that postpetition, pre-conversion increases in equity belong to the estate, the court both creates a circuit split and effectively punishes the Castlemans for filing under Chapter 13 with the forced sale

---

[6]   As noted above, in this case it appears that the increased equity was attributable to market conditions.  However, the district court indicated that the debtors could file an administrative priority claim for mortgage payments they had made in accordance with the confirmation plan for the benefit of the estate pursuant to § 503(b).  *See In re Peter*, 309 B.R. at 795.  The resolution of any such claim is not before us at this time.

[7] The motion filed by National Association of Bankruptcy Trustees for leave to file an amicus brief [Dkt. Entry No. 17] is granted.  The amicus brief filed on January 9, 2023, is deemed filed.

[1] Oral Argument at 14:07, *Castleman, Sr., v. Burman*, No. 22-35604 (9th Cir. May 9, 2023), https://www.youtube.com/watch?v=_TBWjDPd10k.

of their home.  Because that outcome is not the best reading of the Bankruptcy Code or our precedents, I respectfully dissent.

## I

### A

Upon filing for bankruptcy, a debtor's assets are immediately transferred to a bankruptcy estate.  11 U.S.C. § 541(a).  However, the debtor may exempt some property—such as an equitable interest in real property used as a residence—from the estate.  *See* § 522(b)(3)(A), (d)(1).  This exemption is commonly referred to as the "homestead exemption."  In 2019, Washington State allowed a maximum homestead exemption of $125,000.  WASH. REV. CODE § 6.13.030 (2019).  After creation of the estate, the bankruptcy court appoints a trustee to oversee it for the benefit of creditors and other interested parties.  *See* 11 U.S.C. §§ 704, 1302.  If, after accounting for encumbrances and exemptions, a particular asset is "of inconsequential value and benefit to the estate," a debtor may ask the court to "order the trustee to abandon" it.  § 554(b).

Filing under Chapter 7 "allows a debtor to make a clean break from his financial past, but at a steep price: prompt liquidation of the debtor's assets."  *Harris v. Viegalahn*, 575 U.S. 510, 513 (2015).  The trustee will sell the non-exempt property of the estate and distribute the proceeds to creditors.  *Id*. (citing §§ 704(a)(1), 726).  But the Chapter 7 estate does not include wages earned or assets acquired by the debtor after filing for bankruptcy.  *Id*. at 513-14.  After liquidation, the debtor's pre-petition debts will generally be discharged. § 727(a).  "Thus, while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is able to make a

'fresh start' by shielding from creditors his postpetition earnings and acquisitions." *Harris*, 575 U.S. at 514.

A Chapter 13 estate works quite differently: the debtor retains possession of all property, § 1306(b), and proposes a plan to repay creditors over a three-to-five-year period. §§ 1321-22. If the bankruptcy court confirms the plan, confirmation "vests all of the property of the estate in the debtor" unless the plan or a court order says otherwise. § 1327(b). However, "property accumulated during the repayment period becomes part of the bankruptcy estate and is used to repay creditors." *Brown v. Barclay* (*In re Brown*), 953 F.3d 617, 620 (9th Cir. 2020). The Bankruptcy Code encourages Chapter 13 filings because they can "benefit debtors and creditors alike." *Harris*, 575 U.S. at 514. Debtors may keep assets, such as a home or car, and creditors "usually collect more under a Chapter 13 plan than they would have received under a Chapter 7 liquidation." *Id*.

When a debtor converts from Chapter 13 to Chapter 7 in good faith, the property of the converted estate is defined by § 348(f)(1)(A), which provides that the "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion."[2] This statute removes a potential disincentive to Chapter 13 filings: if all assets acquired after filing of the Chapter 13 petition were available to creditors after conversion, the debtor would be "in a worse position than if the petition had been filed in Chapter 7 initially."

---

[2] If a debtor converts in bad faith, § 348(f)(2) makes postpetition, pre-conversion acquisitions available to creditors. Here, all agree the Castlemans converted in good faith due to a pandemic layoff and Mr. Castleman's unfortunate medical diagnosis.

Case: 22-35604, 08/11/2023, ID: 12772707, DktEntry: 33, Page 37 of 46
Case: 22-35604, 07/28/2023, ID: 12763949, DktEntry: 31-1, Page 15 of 24

CASTLEMAN V. BURMAN                    15

*Brown*, 953 F.3d at 620.  By limiting the converted estate to the property a debtor had at the time of the initial petition, § 348(f) "put[s] the debtor where he would have been, had he filed in Chapter 7 initially."  *Id*.

## B

On June 19, 2019, when the Castlemans petitioned for bankruptcy under Chapter 13, their home was worth an estimated $500,000.  They claimed a homestead exemption of $124,923, which was only $77 less than the legally allowed maximum under then-existing Washington law.  The Castlemans also reported that their home was encumbered by a secured mortgage of $375,077.  The bankruptcy court confirmed their Chapter 13 plan on September 25, 2019, and the Castlemans made payments under the plan for twenty months, including a mortgage payment.

On January 12, 2021, with Mr. Castleman unable to work and facing a significant loss of income, the couple moved to convert their case to Chapter 7.  After conversion, the Chapter 7 trustee hired a realtor, who estimated the Castlemans' Bellingham home was worth $700,000 as of April 19, 2021.  Believing the home now had value to the estate, the trustee filed a motion to sell it so that the additional equity could be distributed to creditors.  The Castlemans objected, arguing that postpetition, pre-conversion increases in equity are not "property of the estate" upon conversion under § 348(f)(1)(A).  This is the question that divides our panel.

16                    CASTLEMAN V. BURMAN

II

A

The Castlemans' reading of § 348(f) is correct. In interpreting the Bankruptcy Code, we must begin with the text. *Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d 662, 666 (9th Cir. 2014). There is no debate that the phrase "property of the estate" in § 348(f) is a term of art in bankruptcy law or that the term should be defined by looking to the "broader context of the [Bankruptcy Code] as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). But the court errs in how it applies those principles here. By adopting the trustee's preferred interpretation of § 348(f), the majority sacrifices the text of the bankruptcy statutes on the altar of simplicity.

The court rightly begins by looking to § 541(a), which defines the property of the bankruptcy estate upon filing under either Chapter 7 or Chapter 13. Section 541(a)(1) declares that the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." It also includes all "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." § 541(a)(6). We have already held that in a Chapter 7 case, § 541(a)(6) means that "appreciation enures to the bankruptcy estate, not the debtor." *Schwaber v. Reed* (*In re Reed*), 940 F.2d 1317, 1323 (9th Cir. 1991). This is because in Chapter 7, the "proceeds, product, offspring, rents, or profits of or from property of the estate" under § 541(a)(6) "include[] the appreciation in value of a debtor's home." *Wilson v. Rigby*, 909 F.3d 306, 309 (9th Cir. 2018).

The majority decides that because we have held appreciation becomes part of the estate in a Chapter 7 case, the same must be true in Chapter 13.[3] Admittedly, this is a simple resolution to an issue that has vexed bankruptcy courts across the country.[4] But simplicity cannot take precedence over the text of the Bankruptcy Code, and if we read § 348(f) in light of the Code "as a whole"—rather than just § 541(a)—*Wilson* is not dispositive. *See Robinson*, 519 U.S. at 341. The remainder of the Bankruptcy Code clarifies that in Chapter 13 cases, "property of the estate" is defined differently. § 348(f)(1)(A).

As discussed, a Chapter 7 estate is short-lived: it sweeps in all the debtor's property upon filing and is promptly liquidated to pay creditors. § 541(a)(1); *Brown*, 953 F.3d at 620. But in Chapter 13, the debtor retains possession of all property, § 1306(b), and proposes a plan to repay creditors

---

[3] The trustee's briefing faults the Castlemans for not claiming the increase in equity as exempt. But property which does not become part of the converted estate belongs to the debtor regardless of exemptions. *See Harris*, 575 U.S. at 521.

[4] *Compare In re Goins*, 539 B.R. 510, 515-16 (Bankr. E.D. Va. 2015) (holding appreciation belongs to the estate), *In re Goetz*, 647 B.R. 412, 416-17 (Bankr. W.D. Mo. 2022) (same), *aff'd*, 651 B.R. 292 (B.A.P. 8th Cir. 2023), *In re Hayes*, Case No. 15-20727-MER, 2019 Bankr. LEXIS 4203, at *22, (Bankr. D. Colo. March 28, 2019) (same), *and In re Peter*, 309 B.R. 792, 794-95 (Bankr. D. Or. 2004) (same), *with In re Barrera* (*Barrera I*), 620 B.R. 645, 649-54 (Bankr. D. Colo. 2020) (holding appreciation belongs to the debtor), *aff'd*, *Barrera II*, No. BAP CO-20-003, 2020 WL 5869458 (B.A.P. 10th Cir. Oct. 2, 2020), *In re Cofer*, 625 B.R. 194, 202 (Bankr. D. Idaho 2021) (same), *In re Hodges*, 518 B.R. 445, 451 (E.D. Tenn. 2014) (same), *In re Niles*, 342 B.R. 72, 75-76 (Bankr. D. Ariz. 2006) (same), *In re Boyum*, No. 05–1044–AA, 2005 WL 2175879, at *2-3 (D. Or. Sept. 6, 2005) (same), *and In re Nichols*, 319 B.R. 854, 857 (Bankr. D. Ohio 2004) (same).

over a period of years.  *See* §§ 1321-22.  If the bankruptcy court confirms that plan, confirmation "vests all of the property of the estate *in the debtor*" unless the plan or a court order says otherwise.  § 1327(b) (emphasis added).[5]  Thus, upon confirmation of a Chapter 13 plan, the debtor is once again the owner of the property.  *Cal. Franchise Tax Bd. v. Jones* (*In re Jones*), 420 B.R. 506, 514-15 (B.A.P. 9th Cir. 2009), *aff'd,* 657 F.3d 921, 928 (9th Cir. 2011); *see also Berkley v. Burchard* (*In re Berkley*), 613 B.R. 547, 552-53 (B.A.P. 9th Cir. 2020).

It follows that when a Chapter 13 plan has been confirmed, appreciation accrues to the debtor.  In *Black v. Leavitt* (*In re Black*), our Bankruptcy Appellate Panel (BAP) considered a case where the debtor moved to sell a rental property after the bankruptcy court had confirmed a Chapter 13 plan revesting that property in the debtor.  609 B.R. 518, 521 (B.A.P. 9th Cir. 2019).  The bankruptcy court ordered the debtor to turn over the proceeds of the sale to the trustee.  *Id*. at 523.  On appeal, the trustee argued that the proceeds and any postpetition appreciation in the property's value were part of the estate under §§ 541(a)(6) and 1306.  *Id*. at 528.  The BAP rejected that argument, holding that "the revesting provision of the confirmed plan means that the debtor owns the property outright and that the debtor is entitled to any postpetition appreciation."  *Id*. at 529.

The Tenth Circuit reached a similar conclusion in *Rodriguez v. Barrera* (*Barrera III*), 22 F.4th 1217 (10th Cir. 2022).  There, the debtors confirmed their Chapter 13 plan, sold their home, and then converted from Chapter 13 to Chapter 7 under § 348(f)(1)(A).  *Id*. at 1221-22.  Observing that "only proceeds 'of or from property of the estate'

---

[5] No such provision or order exists in this case.

become property of the bankruptcy estate" under § 541(a)(6), the Tenth Circuit concluded that section is "operative only before confirmation of the Chapter 13 plan because confirmation 'vests all of the property of the estate in the debtor.'" *Id.* at 1223 (quoting § 1327(b)). "Thus, proceeds generated from the debtor's property after confirmation do not become property of the estate as the underlying property no longer belongs to the estate." [6] *Id.*

The Tenth Circuit declined to decide whether postpetition, pre-conversion appreciation would be included in the converted estate when the property has not been sold before conversion. *Id.* at 1223 n.1. But while this case does not involve a pre-conversion sale, we have already held that postpetition appreciation—like the cash proceeds from the sale in *Barrera III*—is "proceeds" of estate property under § 541(a)(6). *Wilson*, 909 F.3d at 309. Here, the underlying property is the Castlemans' home, and their Chapter 13 plan was confirmed on September 29, 2019. When that occurred,

---

[6] The majority claims this interpretation of § 1327(b) would require a third valuation at confirmation because the trustee would be entitled to pre-confirmation appreciation. Op. at 10-11. But the Tenth Circuit did not adopt this approach, *see Barrera III*, 22 F.4th at 1223-24, and neither should we. In most Chapter 13 cases, the debtor must propose a plan within 14 days of the petition date, *see* FED. R. BANKR. P. 3015(b), and the creditors' meeting generally occurs within 50 days of the petition date, see FED. R. BANKR. P. 2003(a). A confirmation hearing must occur within 45 days of that. 11 U.S.C. § 1324(b). Thus, for most debtors, a Chapter 13 plan will either be confirmed within a few months of the initial petition, or else the case will be dismissed or converted. A property will virtually never significantly change in value in such a short period—in fact, the realtor hired in this case estimated the 2021 value of the Castlemans' home by reviewing sales of comparable homes over a period of six months. If we followed our sister circuit's approach, all postpetition appreciation would belong to the Castlemans.

the home was no longer "property of the estate" and therefore any appreciation in its value is not "[p]roceeds . . . of or from property of the estate."[7]  § 541(a)(6).  I would hold, consistent with the Tenth Circuit, that postpetition, pre-conversion appreciation belongs to the Castlemans rather than the converted Chapter 7 estate.  *See United States v. Anderson*, 46 F.4th 1000, 1005 (9th Cir. 2022) ("In cases requiring statutory interpretation . . . we will not create a circuit split unnecessarily.").

## B

While the text of the Bankruptcy Code as a whole establishes that postpetition, pre-conversion appreciation belongs to the Castlemans, the majority's reading of § 348(f)(1)(A) is also inconsistent with the statute's structure, object, policies, and legislative history.  *See Hawkins*, 769 F.3d at 666; *Brown*, 953 F.3d at 623.

In the early 1990s, a circuit split developed on the question of what property should be included in a Chapter 7 estate upon conversion from Chapter 13.  Some courts held that "upon conversion, all postpetition earnings and acquisitions became part of the new Chapter 7 estate, thus augmenting the property available for liquidation and distribution to creditors."  *Harris*, 575 U.S. at 517 (citing *Calder v. Job* (*In re Calder*), 973 F.2d 862, 865-66 (10th Cir. 1992), and *In re Lybrook*, 951 F.2d 136, 137 (7th Cir. 1992)).  However, the Third Circuit had taken the opposite view in

---

[7] The court implies this approach would mean that debtors must bear the risk of depreciation as well.  Op. at 11.  But depreciation in a home's value would not change the amount of the debtor's homestead exemption, *see Law v. Siegel*, 571 U.S. 415, 424-25 (2014), and a trustee would probably abandon any asset which depreciated such that it had no value to the estate.  *See* § 554(a).

*Bobroff v. Continental Bank* (*In re Bobroff*), 766 F.2d 797, 802-03 (3d Cir. 1985), and held that a tort claim which accrued during Chapter 13 proceedings was not part of a Chapter 7 estate upon conversion and belonged to the debtor.

Congress resolved this dispute in the Bankruptcy Reform Act of 1994, which added § 348(f) to the Bankruptcy Code. *See* Pub. L. No. 103-394, § 311, 108 Stat. 4106, 4138 (1994) (prior to 2005 amendment). The House Report on the Act made it clear Congress intended to adopt the Third Circuit's view:

> This amendment overrules the holding in cases such as *Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991) and adopts the reasoning of *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985). However, it also gives the court discretion, in a case in which the debtor has abused the right to convert and converted in bad faith, to order that all property held at the time of conversion shall constitute property of the estate in the converted case.

H.R. REP. NO. 103-835, at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N 3340, 3366. The report included a specific example:

> [Courts following the *Bobroff* approach] have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that

Case: 22-35604, 08/11/2023, ID: 12772707, DktEntry: 33, Page 44 of 46
Case: 22-35604, 07/28/2023, ID: 12763949, DktEntry: 31-1, Page 22 of 24

22          CASTLEMAN V. BURMAN

> after he or she paid off a $10,000 second
> mortgage in the chapter 13 case, creating
> $10,000 in equity, there would be a risk that
> the home could be lost if the case were
> converted to chapter 7 (which can occur
> involuntarily). If all of the debtor's property
> at the time of conversion is property of the
> chapter 7 estate, the trustee would sell the
> home, to realize the $10,000 in equity for the
> unsecured creditors and the debtor would
> lose the home.

*Id*. Clearly, Congress believed that home equity which
accrued during Chapter 13 proceedings should not be
included in the converted estate.

The example in the House Report discusses an increase
in equity resulting from the paydown of a secured loan, but
the court's decision today covers equity from any source and
creates the same disincentive to Chapter 13 filings. When
the Castlemans filed for bankruptcy, all of their home equity
was exempt. Between that exemption and a secured
mortgage, the home had no value to the estate. Had they
filed under Chapter 7, they could have either resolved the
case quickly or moved to force the trustee to abandon the
property. *See* § 554(b); *Barrera I*, 620 B.R. at 655-54.
Instead, the Castlemans committed themselves to a five-year
Chapter 13 plan, paid creditors out of their postpetition
income, and made payments on their mortgage. By the time
they were forced to convert to Chapter 7, their home had
appreciated in value, so the trustee sought to sell it.
Allowing that sale leaves them "in a worse position than if
the[ir] petition had been filed in Chapter 7 initially"—the

exact situation Congress sought to prevent. *Brown*, 953 F.3d at 620.

The majority refuses to consider this history because it finds the text of the Bankruptcy Code unambiguously shows that appreciation belongs to the estate. Op. at 9. I respectfully disagree. But that assertion is all the more remarkable in light of the Tenth Circuit's decision in *Barrera III*, 22 F.4th at 1223, and the majority's recognition that courts are "heavily divided" on the proper meaning of § 348(f).[8] Op. at 5. Indeed, even counsel for the trustee seemed to believe that § 348(f) was ambiguous: when asked at oral argument, he admitted the statute is poorly drafted and agreed that "there is no way to reconcile" the text of § 348(f) with § 541(a).[9] To be sure, legislative history is often unhelpful as an aid to statutory construction. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 376-78 (2012). But here, it is consistent with the text of the Bankruptcy Code, directly relevant to the case at hand, and unequivocally confirms that appreciation in the value of the Castlemans' home should not become part of the converted estate.

## III

Because reasonable judicial minds disagree, there is—once again—a need for Congress to clarify the operation of § 348. Though I dissent from my colleagues' reading of the

---

[8] Certainly a division of authority, standing alone, does not establish ambiguity. But other courts have identified powerful arguments for a different reading of § 348(f), and the creation of a circuit split in particular is to be "avoid[ed] if at all possible." *Anderson*, 46 F.4th at 1008. We ought to employ the full panoply of statutory interpretation tools before departing from the Tenth Circuit's approach.

[9] Oral Argument at 24:06-24:52.

Case: 22-35604, 08/11/2023, ID: 12772707, DktEntry: 33, Page 46 of 46

24                    CASTLEMAN V. BURMAN

statute, it is far from unfounded.  Whether Congress thinks postpetition, pre-conversion appreciation of an asset in the course of Chapter 13 proceedings should or should not become part of the converted Chapter 7 estate, it should amend § 348(f) to make the answer clear.  At least one scholar has already proposed amendments to § 348(f) which would resolve the dispute.  *See* Lawrence Ponoroff, *Allocation of Property Appreciation: A Statutory Approach to the Judicial Dialectic*, 13 WM. & MARY BUS. L. REV. 721, 756-57 (2022).  States may also wish to amend their homestead exemptions.  *See* § 522(b)(3)(A).  For example, while the change came too late to help the Castlemans, Washington State responded to our decision in *Wilson* by allowing debtors to exempt "[a]ny appreciation in the value of the debtor's exempt interest in the property during the bankruptcy case."  *See* Act of May 12, 2021, Ch. 290 § 5, 2021 Wash. Sess. Laws 2306-07 (codified at WASH. REV. CODE § 6.13.070(2) (2022)).

In the absence of legislative action, it remains our duty to read § 348(f) and say what the law is.  I have no doubt that in holding that postpetition, pre-conversion appreciation becomes part of the converted bankruptcy estate, my colleagues in the majority have discharged that duty to the best of their abilities.  But in striving to do the same, I find the text, structure, and history of the statute compel the opposite conclusion.  Because I would hold that the appreciation belongs to the Castlemans, I respectfully dissent.